## 1619

The STATE, Respondent v. James William WINGO, Appellant.

(403 S.E. (2d) 322)

Court of Appeals

*Claude A. Taylor, Jr.* and *J. Derham Cole*, Spartanburg, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *Amie L. Clifford*, Columbia, and *Sol. Holman C. Gossett, Jr.*, Spartanburg, *for respondent.*

Heard Feb. 13, 1991.

Decided March 4, 1991.

GOOLSBY, Judge:

James William Wingo appeals his convictions for first degree criminal sexual conduct and contributing to the delinquency of a minor. The questions on appeal relate to the sufficiency of the indictments' allegations as to the date of each offense, to the admission of evidence of similar crimes, and to the admission on cross-examination of testimony regarding nude photos of Wingo's wife and testimony that Wingo had sexual relations with his wife prior to their marriage. We affirm.

## I.

Wingo moved before trial to quash the two indictments charging him with the offenses for which the jury later convicted him on the ground that the indictments, dated December 5, 1988, failed to specify with any degree of particularity

the time in which the offenses were to have been committed. One indictment alleged Wingo "between July 4, 1988 and August 25, 1988, wilfully and unlawfully engage[d] in sexual battery upon [the victim], a child less than eleven years of age. . . ." The other indictment alleged Wingo "between July 11, 1988 and August 25, 1988, wilfully and unlawfully . . . violat[ed] Section 16-17-490, Code of Laws of S.C., 1987," the statute creating the offense of contributing to the delinquency of a minor, by giving the victim, who was nine years old, alcoholic liquors and showing her obscene movies. The trial court denied the motion. It properly did so.

An indictment must sufficiently apprise the defendant of what he or she should be prepared to meet. *State v. Owens*, 293 S.C. 161, 359 S.E. (2d) 275 (1987); *State v. Ham*, 259 S.C. 118, 191 S.E. (2d) 13 (1972). Where time is not an essential element of the offense, the indictment need not specifically charge the precise time the offense allegedly occurred. *Id.* at 129, 191 S.E. (2d) at 17. In such a case, however, the indictment must show the offense was committed prior to the finding of the indictment. *State v. Gregory*, 191 S.C. 212, 4 S.E. (2d) 1 (1939); 41 Am. Jur. (2d) *Indictments and Informations* § 115, at 953 (1968); 42 C.J.S. *Indictments and Informations* § 125a, at 1007 (1944).

Here, both indictments sufficiently notified Wingo of the offenses with which he was charged since time is not a material element of either the offense of first degree criminal sexual assault or the offense of contributing to the delinquency of a minor and since the indictments allege the commission of the offenses during periods that preceded the date of the indictments. S.C. CODE ANN. § 16-3-652 (1976); *id.* § 16-17-490; *see State v. Allen*, 622 S.W. (2d) 275 (Mo. App. 1981) (the specific date and time of an assault in a child sex case is not an essential element of an indictment); *State v. Roberts*, 101 Idaho 199, 610 P. (2d) 558 (1980) (time is not a material element of a sex offense involving a child); *People v. King*, 41 Colo. App. 177, 581 P. (2d) 739 (1978) (the specific date of an offense is not a material allegation); 42 C.J.S. *Indictments and Informations* § 125a, at 1007 (1944) ("Except where the time is of the essence of the offense itself, it is sufficient to lay it on any day previous to the finding of the indictment. . . ."). Moreover, the time periods during which these of-

fenses allegedly occurred, being less than two months, involved fairly short periods of time. *See State v. Hoban*, 738 S.W. (2d) 536 (Mo. App. 1987) (upholding an indictment in child sex case covering a fifteen-month period); *People v. Naugle*, 152 Mich. App. 227, 393 N.W. (2d) 592 (1986) (an indictment in a child sex case covering periods from one and a half months to three months satisfied statute requiring an indictment to state the time of an offense as near as possible); *Covington v. State*, 703 P. (2d) 436, *on reh.*, 711 P. (2d) 1183 (Alas. 1985) (upholding an indictment in a child sex case covering an eleven-month period); *State v. D.B.S.*, 216 Mont. 234, 700 P. (2d) 630 (1985) (upholding an indictment in a child sex case covering a ten-month period); *People v. Fritts*, 140 Cal. Rptr. 94, 72 Cal. App. (3d) 319 (1977) (upholding an indictment in child sex case covering a one-year period).

## II.

Wingo objected to the testimony of the victim's twelve-year-old female cousin that Wingo had also sexually assaulted the victim's twelve-year-old sister using methods almost identical to those that the nine-year-old victim testified Wingo subsequently employed when he sexually assaulted her. He claimed the testimony was unfairly prejudicial. The trial court, however, allowed the evidence in. We find no reversible error.

First, the evidence of Wingo's prior acts tended to show a common scheme or plan and the probative value of this evidence outweighed its prejudicial effect. *State v. McClellan*, 283 S.C. 389, 323 S.E. (2d) 772 (1984). As in *McClellan*, a case also involving criminal sexual conduct and sisters, "[t]he experiences of each [sister] . . . parallel that of [the other] sister[ ] [.]" *Id.* at 392, 323 S.E. (2d) at 774. Wingo took each sister and the sisters' cousin to his mobile home for them to help him clean it; Wingo played pornographic movies for each sister and the cousin on his VCR; he gave each sister and the cousin alcoholic liquors or drugs; each sister and the cousin bathed naked in Wingo's jacuzzi; Wingo afterward performed cunnilingus on each sister; he either had or attempted to have sexual intercourse with each sister; and he threatened to kill the father or parents of each sister and of the cousin if they told anyone about what had occurred.

Second, the admission of the evidence was cumulative. The victim's sister testified without objection[1] to the same or similar events. *See State v. Brown*, 286 S.C. 445, 334 S.E. (2d) 816 (1985) (the erroneous admission of a doctor's testimony identifying the defendant as the perpetrator of an alleged sexual assault on a child by means of relating the child's statements held harmless in light of cumulative evidence identifying the defendant as the perpetrator); *Harwell v. Columbia Mills*, 112 S.C. 177, 98 S.E. 324 (1919) (any error in the admission of evidence was harmless and not reversible where the same or similar evidence was admitted without objection); *State v. Newell*, — S.C. —, 401 S.E. (2d) 420, 425 (1991) (the admission in evidence of a breathalyzer checklist held harmless error where the checklist was cumulative to the in-court testimony given by its author).

## III.

As we view the record, neither Wingo's contention that the trial court erred in allowing the solicitor to elicit testimony from Wingo on cross-examination that officers found nude photographs of his wife while searching his home nor his contention that the trial court erred in allowing the solicitor to elicit testimony from Wingo on cross-examination that he had sexual relations with his wife before their marriage is properly before this court. The trial court sustained Wingo's objection to the first inquiry without Wingo moving to strike the testimony he gave before making an objection thereto.[2] *See* 88 C.J.S. *Trial* § 133, at 268 (1955) (a

---

[1] The solicitor proffered the testimony of the victim's sister outside the presence of the jury after Wingo's counsel stated, "Your Honor, we wanted to place an objection in the record as to her testimony." After the solicitor examined the victim's sister and Wingo cross-examined her and while the jury was still out, the following occurred:

THE COURT: If the defense has any objections, state it [sic] for the record now.
MR. COLE (defendant's counsel): No, sir.
We don't have any objection.

The jury then returned to the courtroom and the victim's sister testified without an objection of any kind about what happened to her after Wingo took her to his mobile home.

[2] The solicitor questioned Wingo about "what kind of pictures" the officers found of his wife while searching his home. Wingo immediately responded that "[t]hey were her posing nude through the house." Wingo's counsel then objected and requested the matter be taken up outside the presence of the

motion to strike is necessary where a question is answered before an objection thereto has been interposed, even though the objection is sustained). Wingo made no objection to the second inquiry.[3] *State v. Sullivan*, 277 S.C. 35, 282 S.E. (2d) 838 (1981) (an appellant cannot claim error on appeal regarding the admission of certain testimony where the appellant did not make a contemporaneous objection to the testimony).

---

jury. The trial judge granted his request and sent the jury out.

During arguments upon Wingo's objection, the trial judge asked the solicitor, "Did they find any nude pictures of his wife? Is that what you are asking?"

The solicitor replied, "Yes, sir."

The trial judge thereafter stated he would allow the question; however, when the jury returned and the solicitor resumed his cross-examination of Wingo, the following occurred:

[MR. BORSICH (the solicitor)]: Did they have a search warrant, Mr. Wingo—the police?

. . . . .

A.: No, sir.

. . . . .

Q.: Did you give them permission then?
A.: No, sir.
Q.: I believe the last question I asked you was—
THE COURT: Is this going to be the same question?

. . . . .

MR. BORSICH: Yes, sir.
THE COURT: The objection is *now* sustained.

(Emphasis ours.) Wingo made no request that his earlier answer be stricken from the record.

[3] No objection to the question concerning whether Wingo had sexual relations with his wife prior to their marriage appears in the record. What does appear is the following:

Q. (By the solicitor): So there was no sex going on until you got married?
A.: No, sir. I'm not saying that. I said when she first moved in for about six or seven months there wasn't any.

. . . . .

Q.: But there was sex going on between you and her after that?
A.: Yes, sir, before we got married. Yes, sir.
Q.: How old was she then?
A.: Sixteen or 17.
Q.: So you have had sexual intercourse with—
THE COURT: You remember I sustained the objection to that question.
MR. BORSICH: Yes, sir. Excuse me, Judge.

The trial judge had moments before upheld Wingo's objection to the question regarding whether Wingo "[had] ever had sexual intercourse with anyone between the ages of 14, 15, or 16."

Even assuming Wingo objected to both inquiries and the court erred in allowing testimony concerning these two matters in evidence, the error was harmless beyond a reasonable doubt. Apart from the challenged evidence, we are satisfied after a full review of the entire record that sufficient competent evidence conclusively establishes Wingo's guilt to the extent that no other rational conclusion could be reached. The trial court, therefore, committed no reversible error in admitting the testimony in evidence. *See State v. Bailey*, 298 S.C. 1, 377 S.E. (2d) 581 (1989) (the Supreme Court will not set aside a conviction because of insubstantial errors not affecting the result when the defendant's guilt has been conclusively proven by competent evidence such that no other rational conclusion could be reached); *State v. Knight*, 258 S.C. 452, 189 S.E. (2d) 1 (1972) (a conviction will not be set aside for nonprejudicial error in the admission of evidence).

Affirmed.

SANDERS, C.J., and SHAW, J., concur.

