**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Shane Alexander Washington, Appellant.

Appellate Case No. 2016-000907

Appeal From Abbeville County
R. Lawton McIntosh, Circuit Court Judge

Unpublished Opinion No. 2020-UP-003
Submitted November 1, 2019 – Filed January 8, 2020

**AFFIRMED**

Appellate Defender Lara Mary Caudy, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Attorney General David A. Spencer, both of Columbia; and Solicitor David Matthew Stumbo, of Greenwood, all for Respondent.

**PER CURIAM:** Shane Washington appeals his conviction of first-degree criminal sexual conduct with a minor, for which he was sentenced to thirty years' imprisonment. Washington argues the circuit court erred in 1) admitting evidence

of subsequent acts of unindicted sexual misconduct; and 2) refusing to enter a directed verdict when the State failed to present evidence of sexual battery on the date alleged in the indictment. We affirm.

## FACTS

On September 3, 2010, Minor told her father that Washington had been sexually assaulting her since the beginning of July, most recently on September 2, 2010. Minor's father reported the abuse to the police on the same day and, on September 9, 2011, Washington was indicted for first-degree criminal sexual conduct with a minor. On April 6, 2015, Washington's case proceeded to trial, but Washington could not be located. Consequently, Washington was tried *in absentia*.

During the trial, the State presented Minor's October 14, 2010 forensic interview. In the video, Minor described the first instance of abuse. After this description, Washington moved to exclude the remainder of the video from evidence, arguing the remaining instances of abuse described in the video constituted subsequent, unindicted crimes. Washington argued that because he was indicted for conduct on July 1, 2010, the first instance of abuse described in the video was the crime for which he was indicted. Thus, Washington argued, the subsequent crimes were irrelevant to the indicted offense and overly prejudicial.

The circuit court determined that the remainder of the forensic interview was admissible, reasoning the bad acts evidence was part of the *res gestae* and demonstrated motive, intent, and lack of mistake. Before the remainder of the video was published, the circuit court instructed the jury that, to the extent any evidence was presented other than the alleged acts on or around July 1, 2010, it should not consider Washington's guilt or innocence in committing these acts, but should only consider the acts for the purpose of determining motive, intent, absence of mistake, or to present a setting of the case and its environment.

During the remainder of the video, Minor described four instances of abuse. First, Minor described the last instance of abuse, indicating that Washington had put his "private" in her butt. Additionally, Minor described another instance of abuse, asserting that Washington had placed his "private" in her butt, and two additional instances in which Washington made Minor perform fellatio.

After the video concluded, Minor testified that Washington began abusing her around July 2010, when she was seven years old, by touching "both spots on the outside," that he put his "private" in her butt multiple times, and that such abuse occurred in her mother's bathroom and in the "tattoo room." Minor also indicated

that Washington put his "private" in her butt at least once in July, around the time of the first assault, further indicating that it occurred "in the summertime" when she was not in school.

After Minor's testimony, Washington moved for a directed verdict, arguing there was no evidence of sexual battery occurring on or about July 1, 2010. Washington again argued that because the indictment read "on or about July 1, 2010," it could only be referring to the first instance of abuse. The State argued the date in the indictment was not a material element of the crime and that the indictment was a charging instrument that merely needed to put Washington on notice. Ultimately, the circuit court denied the directed verdict.

After deliberating, the jury found Washington guilty of first-degree criminal sexual conduct with a minor, specifically finding "the defendant committed the acts upon Minor, fellatio, any intrusion however slight into any part of her genital or anal openings or any object being inserted into her genital or anal openings." After the jury returned its verdict, the sentence was sealed. On April 20, 2016, the Honorable Donald B. Hocker[1] unsealed Washington's sentence, which was thirty years' imprisonment. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err in admitting subsequent acts of unindicted sexual misconduct?

2. Did the circuit court err in failing to enter a directed verdict on the ground that the State did not present evidence of sexual battery on the date alleged in the indictment?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). Therefore, "[an appellate court is] bound by the [circuit] court's factual findings unless they are clearly erroneous." *Id*. at 6, 545 S.E.2d at 829.

Admissibility of subsequent bad acts

"This same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases." *Id*. "The

---

[1] Washington's trial was before the Honorable R. Lawton McIntosh.

admission of evidence is within the discretion of the [circuit] court and will not be reversed absent an abuse of discretion. An abuse of discretion occurs when the conclusions of the [circuit] court either lack evidentiary support or are controlled by an error of law." *State v. Goodwin*, 384 S.C. 588, 601, 683 S.E.2d 500, 507 (Ct. App. 2009) (quoting *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006)). Accordingly, "[an appellate court] does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the [circuit court]'s ruling is supported by any evidence." *Wilson*, 345 S.C. at 6, 545 S.E.2d at 829. As such, "[i]f there is any evidence to support the admission of [] bad act evidence, the [circuit court]'s ruling will not be disturbed on appeal." *Id*.

Unfair Prejudice

"A [circuit court]'s decision regarding the comparative probative value and prejudicial effect of relevant evidence should be reversed only in exceptional circumstances." *State v. Sweat*, 362 S.C. 117, 129, 606 S.E.2d 508, 514 (Ct. App. 2004). "If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a [circuit] court is reviewed by an appellate tribunal." *Id*. (quoting *State v. Hamilton*, 344 S.C. 344, 358, 543 S.E.2d 586, 598 (Ct. App. 2001), *overruled on other grounds by State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005)).

Directed Verdict

"When a motion for a directed verdict of acquittal is made in a criminal case, the [circuit] court is concerned with the existence or non-existence of evidence, not its weight." *State v. Brown*, 360 S.C. 581, 586, 602 S.E.2d 392, 395 (2004). "On appeal from the denial of a motion for directed verdict, [an appellate c]ourt must view the evidence in a light most favorable to the State." *Id*. An appellate court must find that a case was properly submitted to the jury when "the State presents any evidence [that] reasonably tends to prove the defendant[']s guilt, or from which the defendant[']s guilt can be fairly and logically deduced . . . ." *Id*.; *State v. Morgan*, 352 S.C. 359, 364, 574 S.E.2d 203, 205 (Ct. App. 2002) ("If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, th[e appellate c]ourt must find the case was properly submitted to the jury.").

**LAW/ANALYSIS**

I. **Subsequent bad acts**

Washington argues the circuit court erred in admitting the remainder of the forensic interview because it constituted evidence of subsequent bad acts. The State

argues the circuit court properly admitted the evidence as an exception to Rule 404(b), SCRE, or as part of the *res gestae* of the case. We agree with the State.

"Generally, South Carolina law precludes evidence of a defendant's prior crimes or other bad acts to prove the defendant's guilt for the crime charged." *Sweat*, 362 S.C. at 123, 606 S.E.2d at 511; *see also State v. Lyle*, 125 S.C. 406, 416, 118 S.E. 803, 807 (1923) ("[E]vidence of other distinct crimes committed by the accused may not be adduced merely to raise an inference or to corroborate the prosecution's theory of the defendant's guilt of the particular crime charged."). However, such evidence is admissible

> when it tends to establish (1) motive; (2) intent; (3) absence of mistake; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; and (5) the identity of the person charged with commission of the present crime.

*Sweat*, 362 S.C. at 123, 606 S.E.2d at 511; *see also* Rule 404(b), SCRE ("[Evidence of other bad acts] may . . . be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent."). Additionally, evidence of other bad acts may be admitted under the *res gestae* theory, which "recognizes [such] evidence . . . may be an integral part of the crime with which the defendant is charged, or may be needed to aid the fact finder in understanding the context in which the crime occurred." *State v. King*, 334 S.C. 504, 512, 514 S.E.2d 578, 582 (1999).

Before the circuit court may admit bad acts evidence, it must make several determinations: 1) the proffered evidence must be relevant; 2) when a defendant has not been convicted of the bad acts, the evidence of such acts must be clear and convincing; 3) the bad act evidence must fit within a Rule 404(b) exception or form part of the *res gestae*; and 4) the probative value of such evidence must not be substantially outweighed by the danger of unfair prejudice. *State v. Clasby*, 385 S.C. 148, 154–56, 682 S.E.2d 892, 895–96 (2009); *King*, 334 S.C. at 512–13, 514 S.E.2d at 582–83.

While we do not agree that all four incidents described by Minor in the remainder of the video constitute evidence of subsequent bad acts, at a minimum,

the last incident described likely constitutes evidence of a subsequent bad act.[2] Accordingly, we will analyze whether the circuit court erred in admitting the entire forensic interview. On appeal, Washington does not dispute that the other bad acts were proven by clear and convincing evidence. Therefore, we will review the circuit court's determinations regarding relevance, common scheme, *res gestae*, and unfair prejudice.

### a. Relevance

Washington argues the bad acts evidence is not relevant because the acts occurred after the date of the crime alleged in the indictment. The State argues the acts were relevant because they were intimately connected to the abuse and provided context regarding the time period in which the abuse occurred. The State also argues there is significant probative value in evidence demonstrating continuous illicit intercourse between Washington and Minor. We agree with the State.

"As a threshold matter, the trial judge must initially determine whether the proffered evidence is relevant as required under Rule 401 of the South Carolina Rules of Evidence." *Clasby*, 385 S.C. at 154, 682 S.E.2d at 895. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "Evidence [that] assists the jury in arriving at the truth of an issue is relevant and admissible unless otherwise incompetent." *Sweat*, 362 S.C. at 126, 606 S.E.2d at 513. "Evidence is relevant if it tends to establish or make more or less probable some matter in issue upon which it directly or indirectly bears, and it is not required that the inference sought should necessarily follow from the fact proved." *Id*. at 126–27, 606 S.E.2d at 513.

Our courts have previously found that bad acts evidence can be relevant in establishing charged criminal sexual conduct. *See Clasby*, 385 S.C. at 158–59, 682 S.E.2d at 898 (finding because "there was no physical evidence to corroborate [Minor]'s testimony regarding the indicted offenses of CSC with a minor, first degree and lewd act upon a child, . . . her testimony of Clasby's sustained illicit conduct was *extremely probative to establish the charged criminal sexual conduct underlying the offense of lewd act upon a child*" (emphasis added)). Additionally, under the *res gestae* theory, "evidence of other bad acts may be *an integral part of the crime* with which the defendant is charged[] or *may be needed to aid the fact finder* in understanding the context in which the crime occurred." *King*, 334 S.C. at 512, 514

---

[2] When Minor reported her abuse on September 3, 2010, she claimed that Washington had last abused her the day before.

S.E.2d at 582 (emphases added). Thus, the circuit court properly found the bad acts evidence was relevant.

### b. Bad acts exceptions

Washington argues the circuit court erred in admitting the bad acts evidence because it constituted propensity evidence precluded by Rule 404(b), SCRE. The State argues the circuit court properly admitted the evidence because it satisfies the "common scheme or plan" exception to Rule 404(b) and forms part of the *res gestae*. We agree with the State.

"If the [circuit court] finds the evidence to be relevant, the [court] must then determine whether the bad act evidence fits within an exception of Rule 404(b)[,]" or whether it forms part of the *res gestae*. *Clasby*, 385 S.C. at 154, 682 S.E.2d at 895; *King*, 334 S.C. at 512–13, 514 S.E.2d at 582–83. Pursuant to Rule 404(b), SCRE, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may "be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent." *Id*. "To be admissible, the bad act must logically relate to the crime with which the defendant has been charged." *Clasby*, 385 S.C. at 155, 682 S.E.2d at 895 (quoting *State v. Gaines*, 380 S.C. 23, 29, 667 S.E.2d 728, 731 (2008)); *see also Sweat*, 362 S.C. at 127, 606 S.E.2d at 513 ("The record must support a logical relevance between the prior bad act and the crime for which the defendant is accused." (quoting *King*, 334 S.C. at 512, 514 S.E.2d at 582)). "If the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected." *Sweat*, 362 S.C. at 127, 606 S.E.2d at 513.

#### Common scheme or plan

"The common scheme or plan exception 'is generally applied in cases involving sexual crimes, where evidence of acts prior and subsequent to the act charged in the indictment is held admissible as tending to show continued illicit intercourse between the same parties.'" *State v. Weaverling*, 337 S.C. 460, 469, 523 S.E.2d 787, 791 (Ct. App. 1999) (quoting *State v. Whitener*, 228 S.C. 244, 265, 89 S.E.2d 701, 711 (1955)). "Where there is a close degree of similarity between the crime charged and the prior bad act, [our courts] have held prior bad acts are admissible to demonstrate a common scheme or plan." *Clasby*, 385 S.C. at 155, 682 S.E.2d at 896 (quoting *Gaines*, 380 S.C. at 30, 667 S.E.2d at 731). "When determining whether evidence is admissible as common scheme or plan, the [circuit]

court must analyze the similarities and dissimilarities between the crime charged and the bad act evidence to determine whether there is a close degree of similarity." *Id*. (quoting *State v. Wallace*, 384 S.C. 428, 433, 683 S.E.2d 275, 277–78 (2009)). "When the similarities outweigh the dissimilarities, the bad act evidence is admissible under Rule 404(b)." *Id*. (quoting *Wallace*, 384 S.C. at 433, 683 S.E.2d at 278). Moreover, when a "defendant's []bad acts are directed toward the same victim and are very similar in nature, those acts are admissible as a common scheme or plan." *State v. Kirton*, 381 S.C. 7, 27, 671 S.E.2d 107, 117 (Ct. App. 2008).

Here, the similarities between all of the incidents described by Minor in the interview strongly outweigh the dissimilarities. The following details are consistent among all of the alleged assaults: 1) Minor was the victim, *see id*. ("When a criminal defendant's []bad acts are directed toward the same victim and are very similar in nature, those acts are admissible as a common scheme or plan."); 2) all of the alleged assaults constituted sexual battery;[3] 3) the assaults occurred in Minor's home; 4) the assaults occurred while Minor's mother was asleep or out of the house; 5) most of the assaults occurred at night; and 6) Washington made Minor wear a blindfold or cover her eyes each time. There are two main dissimilarities between the assaults: 1) the location within the house—the tattoo room, her mother's room, and her brother's room—where the abuse occurred; and 2) the type of sexual battery that occurred. Accordingly, we find the similarities between the incidents alleged by

---

[3] Washington argues the first assault did not constitute sexual battery because Minor did not describe any penetration, but indicated the incident merely involved touching on the outside of Minor's "private" and butt. However, Minor also indicated Washington 1) "rubbed on her," touching her "private" and butt on the outside with skin touching skin; 2) blindfolded her; and 3) pulled his pants down and told her to bend over. Minor further indicated she did not know what Washington did to her, but felt something "wet" on her butt when he was finished. Based on this evidence, the circuit court found Minor provided a sufficient description to demonstrate that a sexual battery had occurred. *See Wilson*, 345 S.C. at 6, 545 S.E.2d at 829 ("[An appellate court is] bound by the [circuit] court's factual findings unless they are clearly erroneous."). We agree that Minor sufficiently described a sexual battery when describing the first incident. *See* S.C. Code Ann. § 16-3-651(h) (2015) ("'Sexual battery' means . . . anal intercourse, or any intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of another person's body . . . ."); *see, e.g.*, *State v. Mathis*, 287 S.C. 589, 593, 340 S.E.2d 538, 541 (1986) ("The six-year-old prosecutrix testified that Mathis touched her with his penis. She could not remember if he put it inside her body. However, when asked if it hurt, she replied that it had. This is evidence of some 'intrusion, however slight' . . . .").

Minor strongly outweigh the dissimilarities such that the circuit court did not abuse its discretion in admitting the evidence as an exception to Rule 404(b), SCRE. *See Clasby*, 385 S.C. at 155, 682 S.E.2d at 896 ("When the similarities outweigh the dissimilarities, the bad act evidence is admissible under Rule 404(b)." (quoting *Wallace*, 384 S.C. at 433, 683 S.E.2d at 278)); *see also Wilson*, 345 S.C. at 6, 545 S.E.2d at 829 ("If there is any evidence to support the admission of []bad act evidence, the [circuit court]'s ruling will not be disturbed on appeal.").

*Res gestae*

"Evidence of other crimes is admissible under the res gestae theory when the other actions are so intimately connected with the crime charged that their admission is necessary for a full presentation of the case." *Anderson v. State*, 354 S.C. 431, 435, 581 S.E.2d 834, 836 (2003); *see also King*, 334 S.C. at 512, 514 S.E.2d at 582 ("The res gestae theory recognizes evidence of other bad acts may be an integral part of the crime with which the defendant is charged[] or may be needed to aid the fact finder in understanding the context in which the crime occurred."). "When evidence is admissible to provide this full presentation of the offense, there is no reason to fragmentize the event under inquiry by suppressing parts of the res gestae." *State v. McGee*, 408 S.C. 278, 288, 758 S.E.2d 730, 735 (Ct. App. 2014) (quoting *State v. Preslar*, 364 S.C. 466, 474, 613 S.E.2d 381, 385 (Ct. App. 2005)). "Under this theory, it is important that the temporal proximity of the prior bad act be closely related to the charged crime." *King*, 334 S.C. at 513, 514 S.E.2d at 583. Accordingly, "evidence of []bad acts is inadmissible as part of the *res gestae*[] 'whe[n] the record does not support any relationship between the crime and'" the bad acts.'" *Id*. (quoting *State v. Hough*, 325 S.C. 88, 92, 480 S.E.2d 77, 79 (1997)).

The circuit court properly admitted the bad acts evidence under the *res gestae* theory because the unindicted conduct was so intimately tied to the charged offense that it was necessary for a full presentation of the case. First, the acts were all relatively close in time as they occurred over the course of two months. *See King*, 334 S.C. at 513, 514 S.E.2d at 583 ("Under this theory, it is important that the temporal proximity of the []bad act be closely related to the charged crime."). Second, we believe the bad acts evidence provided context to the crime as part of Washington's sustained illicit conduct. *See id*. at 512, 514 S.E.2d at 582 ("The *res gestae* theory recognizes evidence of other bad acts may be . . . needed to aid the fact finder in understanding the context in which the crime occurred."). Thus, the evidence was helpful to the jury by demonstrating the alleged sexual battery was not a one-time event that may have been misinterpreted or misremembered. Third, we believe the evidence was necessary to complete the "story of the crime on trial." *See*

*Sweat*, 362 S.C. at 133, 606 S.E.2d at 517 (finding bad acts evidence properly admitted under the *res gestae* theory "to 'complete the story of the crime on trial.'"). The bad acts evidence provided a time range for the alleged sexual misconduct, the sustained nature of the abuse, and the consistent methods by which Washington perpetrated the abuse. Accordingly, the circuit court properly admitted the bad acts evidence under the *res gestae* theory. *See McGee*, 408 S.C. at 288, 758 S.E.2d at 735 ("When evidence is admissible to provide this full presentation of the offense, there is no reason to fragmentize the event under inquiry by suppressing parts of the res gestae." (quoting *Preslar*, 364 S.C. at 474, 613 S.E.2d at 385)); *see also Wilson*, 345 S.C. at 6, 545 S.E.2d at 829 ("If there is any evidence to support the admission of []bad act evidence, the [circuit court]'s ruling will not be disturbed on appeal.").

### c. Unfair prejudice

Washington argues the circuit court erred in admitting the bad acts evidence because the danger of unfair prejudice substantially outweighed the evidence's probative value. The State argues the probative value of the bad acts evidence outweighs any danger of unfair prejudice. We agree with the State.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Rule 403, SCRE. As such, even if bad acts evidence falls within an exception to Rule 404(b) or forms part of the *res gestae*, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Clasby*, 385 S.C. at 155–56, 682 S.E.2d at 896; *King*, 334 S.C. at 512, 514 S.E.2d at 582. However, "[a]ll evidence is meant to be prejudicial; it is only *unfair* prejudice [that] must be scrutinized under Rule 403." *McGee*, 408 S.C. at 289, 758 S.E.2d at 736 (alterations in original) (quoting *State v. Collins*, 398 S.C. 197, 207, 727 S.E.2d 751, 757 (Ct. App. 2012), *rev'd on other grounds*, 409 S.C. 524, 763 S.E.2d 22 (2014)). Thus, "[u]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence [that] tends to suggest [a] decision on an improper basis." *Id*. at 288–89, 758 S.E.2d at 736 (quoting *State v. Dennis*, 402 S.C. 627, 636, 742, S.E.2d 21, 26 (Ct. App. 2013)). "The determination of prejudice must be based on the entire record[,] and the result will generally turn on the facts of each case." *Wilson*, 345 S.C. at 7, 545 S.E.2d at 830.

Here, the probative value of the bad acts evidence substantially outweighs the risk of unfair prejudice. First, the risk of unfair prejudice was low because the bad acts evidence, like the evidence of the crime itself, hinged on Minor's credibility. Thus, if the jury found Minor to be credible, it would likely believe her testimony that Washington was guilty of the crime charged and have no reason to consider the

bad acts evidence. *See State v. Aiken*, 322 S.C. 177, 181, 470 S.E.2d 404, 406–07 (Ct. App. 1996) ("[T]he chance that the admission of this evidence unfairly prejudiced [appellant] was small because if the jury found [witness] to be credible, it would likely believe his testimony that [appellant] was guilty of the crime he was charged with and have no reason to consider the testimony concerning the other [crimes]."). Second, the probative value of the bad acts evidence was extremely high because there was no physical evidence of assault. *See Clasby*, 385 S.C. at 158–59, 682 S.E.2d at 897–98 ("[W]e hold *the probative value of this evidence substantially outweighed the danger of unfair prejudice* to [appellant]. Given there was no physical evidence to corroborate [victim's] testimony regarding the indicted offenses of CSC with a minor, first degree and lewd act upon a child, we find her testimony of [appellant's] sustained illicit conduct was *extremely probative* to establish the charged criminal sexual conduct underlying the offense of lewd act upon a child." (emphases added)). Thus, the circuit court properly found that the probative value of the bad acts evidence outweighed the danger of unfair prejudice.[4] *See Sweat*, 362 S.C. at 129, 606 S.E.2d at 514 ("A [circuit court]'s decision regarding the comparative probative value and prejudicial effect of relevant evidence should be reversed only in exceptional circumstances.").

Because the bad acts evidence was relevant and fit a bad acts exception and its probative value outweighed the danger of unfair prejudice, the circuit court did not abuse its discretion in admitting the evidence. *See Goodwin*, 384 S.C. at 601, 683 S.E.2d at 507 ("The admission of evidence is within the discretion of the [circuit] court and will not be reversed absent an abuse of discretion." (quoting *Pagan*, 369 S.C. at 208, 631 S.E.2d at 265)).

## II. Directed verdict

"When a motion for a directed verdict of acquittal is made in a criminal case, the [circuit] court is concerned with the existence or non-existence of evidence, not its weight." *Brown*, 360 S.C. at 586, 602 S.E.2d at 395. As such, "[t]he [defendant]

---

[4] Washington argues the prejudicial effect of the bad acts evidence is enhanced by the State's allegedly improper closing argument in which it argued, "If you find as a jury that he stuck his penis in her bottom, he stuck his penis in her mouth like she testified, if you find that she told the truth, then you find the Defendant guilty." This issue has not been preserved for appellate review as Washington did not object to the closing argument at trial. *See Ligon v. Norris*, 371 S.C. 625, 633 n.1. 640 S.E.2d 467, 471 n.1 (Ct. App. 2006) ("When a party fails to make a timely objection to an improper closing argument, the issue is not preserved for appellate review.").

is entitled to a directed verdict when the evidence merely raises a suspicion of guilt[,]" or "when the State fails to present evidence on a material element of the offense charged." *Id*. Conversely, "[a]ny evidence, direct or circumstantial, tending to prove the guilt of the accused creates a jury issue." *Mathis*, 287 S.C. at 593, 340 S.E.2d at 541. Thus, "if the State presents any evidence [that] reasonably tends to prove the defendant[']s guilt, or from which the defendant[']s guilt can be fairly and logically deduced, the case must go to the jury." *Brown*, 360 S.C. at 586, 602 S.E.2d at 395.

"A person is guilty of criminal sexual conduct with a minor in the first degree if the actor engages in sexual battery with a victim who is less than eleven years of age." S.C. Code Ann. § 16-3-655(A)(1) (2015). "'Sexual battery' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes." S.C. Code Ann. § 16-3-651(h). In regard to the element of intrusion, "[f]ull penetration is not necessary." *State v. Johnson*, 334 S.C. 78, 85, 512 S.E.2d 795, 798 (1999). Moreover, "[a] conviction for a sexual battery may be sustained on the uncorroborated testimony of the victim." *Id*. at 84–85, 512 S.E.2d at 798.

"Strict common law practice requires an indictment to allege the day of the month and year when the offense was committed." *State v. Thompson*, 305 S.C. 496, 500, 409 S.E.2d 420, 423 (Ct. App. 1991). "This rule still applies in any case where the date is a material element of the offense." *Id*. "A material variance between charge and proof entitles the defendant to a directed verdict." *State v. Watts*, 321 S.C. 158, 168, 467 S.E.2d 272, 278 (Ct. App. 1996). "However, a variance is not material 'where the matter alleged is not an element of the offense.'" *Id*. (quoting *State v. Hiott*, 276 S.C. 72, 81, 276 S.E.2d 163, 167 (1981)). "The specific date and time is not an element of the offense of first degree criminal sexual conduct." *Thompson*, 305 S.C. at 501, 409 S.E.2d at 423. Accordingly, an indictment for first-degree criminal sexual conduct with a minor "must sufficiently apprise the defendant of what he or she should be prepared to meet[,]" but the "indictment need not specifically charge the precise time the offense allegedly occurred." *State v. Wingo*, 304 S.C. 173, 175, 403 S.E.2d 322, 323 (Ct. App. 1991); 75 C.J.S. *Rape* § 61, Westlaw (database updated December 2019) ("Any variance between the date on which an indictment alleges that a rape offense occurs and the date proved at the trial does not entitle the accused to an acquittal since the date and time are not elements of the charged offense, and the accused has sufficient knowledge of the charge against him to adequately prepare a defense."). Rather, "the indictment must

show the offense was committed prior to the finding of the indictment." *Wingo*, 304 S.C. at 175, 403 S.E.2d at 323; 65 Am. Jur. 2d *Rape* § 36, Westlaw, (database updated November 2019) ("Thus, rape can be proved to have been committed at any time before the date of the information and within the period of the statute of limitations . . . .").

Based on our state's law, the date of the alleged sexual battery is not a material element of first-degree criminal sexual conduct with a minor. *See Thompson*, 305 S.C. at 501, 409 S.E.2d at 423 ("The specific date and time is not an element of the offense of first degree criminal sexual conduct."). Therefore, because the indictment was sufficient to put Washington on notice of the crime for which he was accused, the State was required to prove only that the sexual battery occurred before the date of the indictment. *See Wingo*, 304 S.C. at 175, 403 S.E.2d at 323 ("[T]he indictment must show the offense was committed prior to the finding of the indictment."). While there is significant evidence in the record upon which the jury could have determined Washington committed sexual battery, we focus on Minor's testimony for the sake of brevity. Minor testified Washington put his "private" in her butt sometime in July around the time of the first incident. This testimony alone constitutes evidence of sexual battery upon which the jury could have found Washington guilty of first-degree criminal sexual conduct with a minor. *See* S.C. Code Ann. § 16-3-651(h) ("'Sexual battery' means . . . anal intercourse, or any intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of another person's body . . . ."); *see also Mathis*, 287 S.C. at 593, 340 S.E.2d at 541 ("Any evidence, direct or circumstantial, tending to prove the guilt of the accused creates a jury issue."); *Johnson*, 334 S.C. at 84–85, 512 S.E.2d at 798 ("A conviction for a sexual battery may be sustained on the uncorroborated testimony of the victim."). Thus, the circuit court properly denied Washington's motion for a directed verdict.

## CONCLUSION

For the foregoing reasons, Washington's conviction is

**AFFIRMED.**[5]

**SHORT, THOMAS, and GEATHERS, JJ., concur.**

---

[5] We decide this case without oral argument pursuant to Rule 215, SCACR.